# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DOUGLAS LITOWITZ, | ) |
| Plaintiff, | ) |
| | ) No. 19-cv-03197 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| RICHARD HADDAD, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Douglas Litowitz was sued in New York state court by Defendant U.S. Immigration Fund, LLC ("USIF"). Litowitz claims that the Verified Amended Complaint ("VAC") in the New York action contained numerous false and defamatory statements about him. While that case was pending, one of Litowitz's co-defendants there, Xuejun Makhsous ("Zoe Ma"),[1] sued USIF and several others in this Court ("Zoe Ma Lawsuit"). In connection with its first motion to dismiss the Zoe Ma Lawsuit, USIF filed a declaration by Defendant Richard Haddad that attached the VAC as an exhibit. Litowitz claims he was defamed by the republication of the VAC. Consequently, Litowitz has brought the present five-count defamation action against Defendants USIF, Haddad, William Moran, and Mark Giresi.[2] (First Am. Compl. ("FAC"), Dkt. No. 6.) Defendants now move to dismiss the FAC for lack of personal jurisdiction and failure to

---

[1] According to the VAC, Makhsous goes by the name Zoe Ma, and the VAC refers to her by that name. (FAC, Ex. 1, Dkt. No. 6-1.) For that reason, the Court will also use the name Zoe Ma to refer to Makhsous.

[2] The FAC incorrectly spells Giresi's last name as "Gerasi." (Giresi Decl. in Supp. of Mot. to Dismiss ¶ 1, Dkt. No. 9-3.)

state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).[3] (Dkt. No. 9.) For the reasons that follow, the motion to dismiss is granted.

## BACKGROUND

For the purposes of the motion to dismiss, the Court accepts all well-pleaded facts in the FAC as true and views the facts in the light most favorable to Litowitz as the non-moving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Litowitz, an Illinois-based attorney, was one of three defendants sued by USIF in an action brought in New York state court. (FAC ¶¶ 1–2, 19; FAC, Ex. 1, Dkt. No. 6-1.) Haddad and Moran were USIF's attorneys in that lawsuit, and they drafted and submitted the VAC. (FAC ¶¶ 2, 20–21.) In addition, Giresi, a USIF representative, verified the truth of the allegations in the VAC. (*Id.* ¶¶ 2, 22.) Along with Litowitz, the VAC also named as defendants Zoe Ma and a Hong Kong business known as Reviv-East Legal Consultants (HK) Co., Ltd. ("Reviv-East"). (FAC, Ex. 1 at 4.) Broadly, the VAC alleges that Litowitz and his associate Zoe Ma created Reviv-East solely to defraud USIF. (*Id.* at 5.)

According to Litowitz, the VAC contains numerous defamatory statements about him. (FAC ¶ 3.) For example, the VAC states that Litowitz is "from the seedy side of the legal profession." (*Id.* ¶ 28.) It then accuses Litowitz and Zoe Ma of going to Hong Kong and creating a business, Reviv-East, "for the purpose of fraud, deceptively and maliciously insinuating themselves into USIF's business." (FAC ¶ 30 (internal quotation marks omitted), FAC, Ex. 1 at 4–5.) The VAC also claims that Litowitz committed "numerous violations of the codes and

---

[3] The motion to dismiss also initially sought dismissal as to Haddad, Moran, and Giresi based on insufficient process and insufficient service of process pursuant to Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5). In their reply brief and in open court, Haddad and Moran subsequently stipulated that service was properly effected as to them. Because the Court finds that it lacks personal jurisdiction over Giresi, there is no need to consider whether service was proper as to him.

canons of legal ethics." (FAC ¶ 30.) Litowitz points to several other statements in the VAC containing similar allegations of wrongdoing against him. (FAC ¶¶ 40–41, 50, 59, 66.) However, Litowitz denies the VAC's allegations of wrongdoing and contends that Defendants made the false statements about him with reckless disregard of the truth. (*Id.* ¶¶ 31, 42, 51, 60, 67.)

While Litowitz recognizes that Defendants were protected by the litigation privilege from liability for filing allegedly false and defamatory statements in the VAC in the New York lawsuit, he contends that they subsequently engaged in conduct not covered by the privilege. (*Id.* ¶ 12–15.) Specifically, Defendants filed the entire VAC as an exhibit in the Zoe Ma Lawsuit. (*Id.* ¶ 8.) The Zoe Ma Lawsuit refers to the action brought in this Court by Litowitz's co-defendant in the New York action. (FAC ¶ 8; *Makhsous v. Mastroianni*, No. 19-cv-01230 (N.D. Ill.)). In her original complaint, Zoe Ma alleged that the defendants, including USIF, were engaged in a criminal enterprise related to their solicitation and management of investments by Chinese EB-5 investors.[4] (Compl., *Makhsous*, No. 19-cv-01230 (Feb. 19, 2019), Dkt. No. 1.)[5] USIF joined with several other defendants to move to dismiss the Zoe Ma Lawsuit. (Mot. to Dismiss, *Makhsous*, No. 19-cv-01230 (Mar. 6, 2019), Dkt. Nos. 7, 9.) One of the arguments in the motion was that the Court should abstain under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), because the then-pending New York action was a parallel action that arose from the same facts as the Zoe Ma Lawsuit. To support that argument, USIF submitted a declaration from Haddad that attached the VAC. (Decl. of Haddad in Supp. of Mot. to Dismiss, Ex. A, *Makhsous*,

---

[4] The EB-5 Immigrant Investor Program was created by Congress in 1990 and allows foreign investors a chance to obtain permanent legal residence in the United States by investing at least $500,000 in a new commercial enterprise that creates ten full-time employment positions for individuals legally residing or working in the United States. *About the EB-5 Visa Classification*, U.S. Citizenship & Immigration Servs., https://www.uscis.gov/working-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/about-eb-5-visa-classification (last updated Jan. 13, 2020).

[5] The Court takes judicial notice of the filings in the Zoe Ma action. *See Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017).

No. 19-cv-01230 (Mar. 6, 2019), Dkt. No. 10-1.) But because Litowitz claims he was not involved in the Zoe Ma Lawsuit, he argues that the litigation privilege does not shield Defendants from liability for filing the VAC in that action. (FAC ¶¶ 10–11.) As a result of that filing, Litowitz brings the present defamation action.

## DISCUSSION

While Defendants move to dismiss Litowitz's entire FAC for failure to state a claim, they also ask the Court to dismiss Moran and Giresi from the action because this Court lacks personal jurisdiction over them. The Court first addresses whether it has jurisdiction over Moran and Giresi before deciding whether Litowitz has stated a claim against anyone.

### I. Personal Jurisdiction

A motion to dismiss under Rule 12(b)(2) "tests whether a federal court has personal jurisdiction over a defendant." *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1045 (N.D. Ill. 2015). When its existence is challenged, the plaintiff bears the burden of establishing personal jurisdiction. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). And when a court rules on a Rule 12(b)(2) motion based on the parties' submission of written materials without holding an evidentiary hearing, "the plaintiff need only make out a *prima facie* case of personal jurisdiction." *Id.* (internal quotation marks omitted). Any well-pleaded facts alleged in the complaint are taken as true and any factual disputes in supporting affidavits are resolved in the plaintiff's favor. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Still, where the defendant "submits affidavits or other evidence in opposition, 'the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction.'" *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 818 (N.D. Ill. 2008) (quoting *Purdue Research*

*Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003)). If the plaintiff fails to refute a fact contained in the defendant's affidavit, that fact is accepted as true. *Id.*

A federal court sitting in diversity applies the personal jurisdiction rules of the state in which it sits. *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015). In Illinois, courts may exercise personal jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause. *Id.* (citing 735 ILCS 5/2-209(c)). Thus, the question before the Court is whether Moran and Giresi each have "sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Tamburo*, 601 F.3d at 700–01 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Both Moran and Giresi have submitted declarations stating that they are not Illinois residents, have no contacts with Illinois, and have not participated in the Zoe Ma Lawsuit. (Moran Decl. in Supp. of Mot. to Dismiss ¶ 2, Dkt. No. 9-2; Giresi Decl. in Supp. of Mot. to Dismiss ¶ 4, Dkt. No. 9-3.) Litowitz does not refute Moran and Giresi's declarations and therefore the Court accepts as true that they have no contacts with Illinois.

Despite Moran and Giresi's lack of contacts with Illinois, Litowitz contends this Court may exercise specific personal jurisdiction over them because Litowitz felt the injury from their defamatory statements in Illinois. The specific personal jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Thus, "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.*

Here, Moran and Giresi's suit-related conduct was limited to drafting and verifying the VAC prior to filing it in the New York action. They had no involvement with the Zoe Ma Lawsuit and played no role in the publication of the VAC in connection with that action. Standing alone,

5

the fact that Litowitz suffered his injury in Illinois is not a sufficient link between Moran and Giresi and this forum. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290. Having failed to demonstrate such a connection, Litowitz has fallen short of carrying his burden of making out a *prima facie* case of specific personal jurisdiction. For that reason, Defendants' Rule 12(b)(2) motion is granted and Moran and Giresi are dismissed from this action.

## II. Failure to State a Claim

Because there is no dispute that the Court has jurisdiction over USIF and Haddad, the Court next must determine whether the FAC states a claim against them. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

The FAC sets out five separate counts of defamation *per se* against Defendants—each related to an allegedly defamatory statement made in the VAC. In Illinois, a "statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers the person in the eyes of the community or deters third persons from associating with [him]." *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1214 (Ill. 1996). To state a defamation claim, a

6

plaintiff must allege facts showing: (1) a false statement by the defendant about the plaintiff; (2) the defendant made an unprivileged publication of that statement to a third party; and (3) that publication caused damages. *Solaia Tech., LLC v. Specialty Publ'g Co.*, 852 N.E.2d 825, 839 (Ill. 2006). A defamatory statement is actionable *per se* where "its harm is obvious and apparent on its face." *Id.* Illinois recognizes five categories of statements considered defamatory *per se*:

> (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication.

*Id.* Litowitz alleges that Defendants' statements impute that he lacks integrity and honesty in performing his duties as an attorney.

In response, Defendants contend that, because they filed the VAC containing the purportedly defamatory statements during the course of and as part of a judicial proceeding, the absolute litigation privilege completely shields them from liability. Illinois courts recognize the absolute litigation privilege "to provide attorneys with the utmost freedom in their efforts to secure justice for their clients." *O'Callaghan v. Satherlie*, 36 N.E.3d 999, 1008 (Ill. App. Ct. 2015). The privilege is adopted from the Restatement (Second) of Torts, which provides:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

*Id.* at 1007–08 (quoting Restatement (Second) of Torts § 586). "The privilege affords complete immunity, irrespective of the attorney's knowledge of the statement's falsity or the attorney's motives in publishing the defamatory matter." *Golden v. Mullen*, 693 N.E.2d 385, 389 (Ill. App. Ct. 1997). Although the communication must "pertain to proposed or pending litigation . . . [t]he

pertinency requirement is not applied strictly, and the privilege will attach even where the defamatory communication is not confined to specific issues related to the litigation." *Id.*

Litowitz concedes that Defendants are shielded from liability for filing the VAC in the New York action. However, he claims the privilege does not protect them for republishing the VAC (along with its allegedly defamatory statements) when they filed it in the Zoe Ma Lawsuit. But the litigation privilege would be rendered quite hollow if it could be broken simply by republishing a privileged, publicly-available document outside of the underlying judicial proceeding.[6] In any case, there is no authority for Litowitz's contention that the privilege does not extend to communications about him in the Zoe Ma Lawsuit because he is not a party, a witness, or involved in any capacity in that action. *Gorman-Dahm v. BMO Harris Bank, N.A.*, 94 N.E.3d 257, 264 (Ill. App. Ct. 2018) ("There is no authority for the proposition that a plaintiff must be a party to the litigation for the absolute litigation privilege to apply."). Instead, a matter is covered by the privilege so long as it has a connection to the litigation. *Id.* Moreover, it is evident from the original complaint in the Zoe Ma Lawsuit that Litowitz is not, in fact, a stranger to that action. Rather, Litowitz appears in the original complaint several times. Specifically, the complaint in the Zoe Ma Lawsuit alleges that Zoe Ma and Litowitz had a business relationship and that together they provided services to Chinese EB-5 investors involved with USIF. While Litowitz confidently states in his FAC that he will not be a witness in the Zoe Ma Lawsuit, the parties have not even made initial disclosures in that action. And it seems highly likely that Litowitz would be a key witness should the Zoe Ma Lawsuit progress past the motion to dismiss stage.[7]

---

[6] The VAC is publicly available on the New York Supreme Court's free SCROLL system. (FAC ¶ 4.)

[7] This Court recently dismissed the first amended complaint in the Zoe Ma Lawsuit without prejudice but granted the plaintiff leave to file a second amended complaint. (Mem. Op. and Order, *Makhsous*, No. 19-cv-01230 (Mar. 31, 2020), Dkt. No. 82.)

Litowitz also claims that there was no need for Defendants to attach the entire VAC, as it had no pertinence to any issue in the Zoe Ma Lawsuit. The Court disagrees. In fact, the VAC was directly relevant to an issue in the first motion to dismiss the Zoe Ma Lawsuit because USIF and the other defendants in that case asked this Court to abstain under the *Colorado River* doctrine. Stemming from the Supreme Court's decision in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), the *Colorado River* abstention doctrine "permits federal courts to defer to a 'concurrent state proceeding' as a matter of 'wise judicial administration.'" *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 497 (7th Cir. 2011) (quoting *Colorado River*, 424 U.S. at 818). Determining whether to abstain under the doctrine involves a two-part inquiry: "First, the court must determine whether the concurrent state and federal actions are . . . parallel. If so, the court must consider second whether 'exceptional circumstances' justify abstention." *Id.* at 498 (citation omitted). In arguing for abstention, USIF asserted that the New York action was a parallel action to the Zoe Ma Lawsuit. A district court's determination of whether two suits are parallel requires it to "examine whether the suits involve the same parties, arise out of the same facts and raise similar factual and legal issues." *Tyrer v. City of South Beloit*, 456 F.3d 744, 752 (7th Cir. 2006). Usually, that requires the district court to engage in a "painstaking comparison of the federal and state complaints." *Id.* Defendants properly submitted the entire VAC to allow this Court to perform its *Colorado River* analysis.

Litowitz nonetheless claims that just because the VAC broadly pertains to the Zoe Ma Lawsuit does not mean that Defendants' republication of its allegations specific to him is covered by the litigation privilege. Citing *Medow v. Flavin*, Litowitz contends that Defendants are required to parse the entire communication to determine "the relevance of the specific defamatory matter rather than the relevance of the communication as a whole." 782 N.E.2d 733, 744 (Ill. App.

9

Ct. 2002). The appellate court's holding in *Medow* was based on a comment to the Restatement providing that "a defendant 'is not answerable for defamatory matter volunteered or included by way of surplusage in his pleadings if it had any bearing upon the subject matter of the litigation.'" *Id.* (quoting Restatement (Second) of Torts § 587 cmt. c). Emphasizing the requirement that any surplusage have some "bearing upon the subject matter of the litigation," the appellate court found that while the letter containing the defamatory statement was pertinent to the litigation, the defendant had not proved the pertinence of a specific defamatory statement contained within that letter. *Id.* at 744–45. Notably, the ruling, issued at the summary judgment stage, was based on the fact that the defendant had submitted little evidence concerning how the defamatory statement related to the subject matter of the litigation. *Id.*

Here, there is no question that the statements in the VAC were relevant to the Zoe Ma Lawsuit. As discussed above, the original complaint contains allegations concerning a business relationship between Zoe Ma and Litowitz,[8] and the business relationship between Litowitz and Zoe Ma lies at the heart of the VAC. Thus, requiring Defendants to remove allegations about Litowitz from the VAC before submitting it in support of their *Colorado River* argument could have impaired this Court's ability to conduct a "painstaking comparison" of the VAC and the complaint in the Zoe Ma Lawsuit.

---

[8] Because the FAC contends that the VAC had no relationship to the allegations in the original complaint in the Zoe Ma Lawsuit, the Court limits its analysis to the original complaint in that suit and the arguments made on the motions to dismiss that complaint. Still, the Court notes that before Litowitz filed the FAC on May 14, 2019, Zoe Ma filed an amended complaint in the Zoe Ma Lawsuit. (First Am. Compl., *Makhsous*, No. 19-cv-01230 (Apr. 17, 2019), Dkt. No. 27.) Not only does Litowitz play a more prominent role in Zoe Ma's first amended complaint, which pleads extensive detail about his business relationship with Zoe Ma, but the first amended complaint also sets forth two new claims that Zoe Ma first raised as counterclaims in her answer to the VAC. (*Compare* First Am. Compl. ¶¶ 241–56, *Makhsous*, No. 19-cv-01230, *with* Decl. of Haddad in Supp. of Mot. to Dismiss, Ex. B ¶¶ 35–57, *Makhsous*, No. 19-cv-01230 (Mar. 6, 2019), Dkt. No. 10-2.) Those counterclaims arose directly from the allegations in the VAC, including the claim that Litowitz and Zoe Ma created Reviv East for the purpose of fraud.

Nonetheless, Litowitz asserts that Defendants could have submitted the VAC but redacted the defamatory allegations about him or filed the VAC under seal. Yet Litowitz cites no on-point authority for this argument.[9] While Litowitz insists that Defendants easily could have taken measures to keep the VAC confidential, "[t]here is a strong presumption toward public disclosure of court files and documents." *Strait v. Belcan Eng'g Grp., Inc.*, No. 11-cv-1306, 2012 WL 2277903, at *1 (N.D. Ill. June 18, 2012). Under Federal Rule of Civil Procedure 26(c), a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." But such motions are not granted as a matter of course. To the contrary, a party seeking confidentiality must provide reasons and legal citations and must provide support for any claim of injury resulting from public disclosure. *See Strait*, 2012 WL 2277903, at *1. Here, Defendants would have had a very difficult time arguing to this Court that sealing or redacting the VAC was necessary to avoid injury given that the VAC was already publicly available.

In short, Defendants are shielded by the litigation privilege from liability for filing the VAC in the Zoe Ma Lawsuit. For that reason, Litowitz's FAC is dismissed. The present inquiry does not conclude there, however, as Defendants contend that the dismissal should be with prejudice because any claims arising from the publication of the VAC are absolutely privileged. The Court agrees to the extent that Litowitz would have no legal basis to file a Second Amended Complaint centered around the allegations in the VAC. But there is one allegation in the FAC that

---

[9] For support, Litowitz cites the background facts recounted in *Johnson v. Johnson & Bell, Ltd.*, 7 N.E.3d 52, 54–55 (Ill. App. Ct. 2014). There, the appellate court noted that in an earlier proceeding, the defendant had filed documents containing personally-identifiable information and other private information about the plaintiff. When the issue was brought to the attention of the district court and the Seventh Circuit, the courts simply granted motions to seal. Those facts are inapposite to the facts in this case and simply stand for the unremarkable proposition that filings containing personally-identifiable information and confidential health and financial information should be filed under seal or such information should be redacted. Moreover, even on the facts in *Johnson*, the appellate court went on to find that the litigation privilege applied. *Id.* at 56–57.

could potentially supply a basis for a defamation claim—the FAC references an article published by Law360 discussing the New York action and recounting some of the VAC's allegations against Litowitz. (*See* FAC ¶ 5.)

That article does not form the basis of any count in the FAC and Litowitz does not raise it as a defense to dismissal. Instead the FAC cites the article to show how the defamatory statements in the VAC were disseminated in Illinois. (*See id.* ¶¶ 7, 36.) Of course, the article itself could not give rise to a defamation claim against any Defendant in this case insofar as it recounted the contents of the VAC because it was not published by any Defendant; the article's author and Law360 are not defendants here. But the article suggests that Litowitz could raise a claim related to the VAC not barred by the litigation privilege. In particular, the VAC alleges that Haddad was quoted in the Law360 article as stating that the VAC's "allegations of misconduct are serious and well-documented and the documentary evidence attached to the complaint is incontrovertible." (FAC ¶ 6.) It is at least plausible that this statement would not be privileged. *See August v. Hanlon*, 975 N.E.2d 1234, 1248–49 (Ill. App. Ct. 2012) (holding that the litigation privilege did not apply to an attorney's comments to a newspaper reporter about a lawsuit).

To say that Litowitz might have a plausible claim is not to say that such a claim would survive a motion to dismiss. Where, as here, the statement in question was made by a New York resident about a New York lawsuit and causes injury to an Illinois resident, there is a choice-of-law issue. At least one court in this District has applied New York privilege law where the alleged wrongful conduct took place in New York and the injury was felt in Illinois. *See Wilkow v. Forbes, Inc.*, No. 99 C 3477, 2000 WL 631344, at *5–7 (N.D. Ill. May 15, 2000). And New York law provides that a "civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding." N.Y. Civ. Rights Law § 74.

That privilege has been extended "to comments made by attorneys to the press in connection with the representation of their clients." *McNally v. Yarnall*, 764 F. Supp. 853, 856 (S.D.N.Y. 1991).

Since the issues raised concerning Haddad's comment in the Law360 article are not presently before the Court, the above discussion should not be understood to express any opinion on the merits of any potential defamation claim based on that statement. Instead, the Court simply finds that the possibility that Haddad's comment might give rise to a claim not definitively barred by Illinois's litigation privilege warrants dismissing the FAC without prejudice and granting Litowitz leave to amend.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 9) is granted. Defendants Moran and Giresi are dismissed from this action for lack of personal jurisdiction pursuant to Rule 12(b)(2). The remainder of the FAC is dismissed without prejudice pursuant to Rule 12(b)(6).

ENTERED:

Dated: April 10, 2020

Andrea R. Wood
United States District Judge